No. 3398.

(Court of Appeal, Parish of Orleans.)

VITO ORLANDO vs ILLINOIS CENTRAL R. R. CO.

1.  To recover damages for a malicious prosecution three things must concur:
    1st. The motive of the party instituting or prosecuting the suit or proceeding must have been malicious.
    2nd. The suit or proceeding complained of must have been instituted without any probable cause.
    3rd. The suit must have terminated.

2.  A railroad company has the right to use and employ its private property in such manner as it sees fit, so long as the employment is not of a nature reprobated by law, injurious to the right of others or repuguant to its charter or its obligations as a public carrier; hence it may properly designate certain portions of its depot site for specific purposes and from which it may exclude all persons save those, whom, by the nature of their or its business, it invited thereon.

3.  A person on such excluded portion of a depot site, being there without authority, or invitation resulting from the nature of their business commits a breach of the peace when cautioned and requested to leave and refuses to depart therefrom.

4.  Any act having a tendency to produce a breach of the peace is itself a breach of the peace.

Appeal from Civil District Court, Division D.

Wickliffe and Falls, for plaintiff and appellee.

Gustave Lemle, for defendant and appellant.

MOORE J. This was an action sounding in damages for alleged malicious prosecution.

From a judgment, based on the verdict of a jury, in favor of the plaintiff, the defendant appeals.

The salient facts are that entirely upon its own private property the defendant company has built, under plans and specifications approved and adopted by an ordinance of the city of New Orleans, a depot in said city which it operates for the purposes of its business; and, under contract with the Yazoo and Mississippi Valley Railroad Company and the Southern Pacific Railroad Company for similar purposes for these companies. The depot is exclusively a passenger depot. Facing east and some distance back from its property line and some forty feet back from its northern line the

131

defendant company has erected a building containing the usual waiting-rooms, offices, etc. To the rear of the building and separated therefrom by an iron railing, is the car shed. Passengers departing this city enter the depot building, thence through to the railing at the west, or rear of the building, passing through the appropriate gates in the railing, into the cars. Departing trains are made up entirely beyond and in the rear of this iron railing. Arriving trains, however, to the extent of the engine and tender and the mail, baggage and express cars are run out beyond and eastward of the iron railing which separates the depot building from the car shed, on a track which runs parallel with a paved walk which abuts the depot building on the north. The coaches remain under the shed; the passengers being discharged through a gate in the iron railing, and which gate directly faces the paved walk stated. Arriving trains, to the extent stated, are halted along the side of the paved walk and on this walk is discharged and handled the mail, baggage and express matter, it serving at the same time as a passage way to the street for passengers who are discharged from arriving trains through the gate at the north end of iron railing, and which gate is marked "A" on the annexed sketch. In order to enable passengers to reach the street, on arriving here, without embarrassment and the "forcing of their way through a mob of people," and that those who may be employed for that service may be the better enabled to handle the baggage, mail and express matter, the defendant company has ordained that no persons whomsoever shall be permitted to loiter or enter the paved walk, save and except those for whose use and employment, as stated, the walk was intended.

The plaintiff was familiar with the *locus in quo*. He had been all over the premises frequently. He had invaded the baggage room on one occasion and raising a disturbance was threatened with arrest if he did not desist. He was also advised of the company's rule concerning the paved walk. He had entered it several times and was ordered off and was cautioned not to return.

On the 30th day of March 1903 he again entered upon the paved walk at or about the time of the arrival of a passenger train. He was not of those who, under the rules of the company, were invited or permitted to be on that walk. He was again informed by a policeman that he was violating the rules of the company; that he had no right to be there and that he must get off. He was standing at that time at the point marked "O" on the sketch. He absolutely and defiantly refused to leave, whereupon the policeman arrested him, charging him with "loitering" and with "breach of the peace." He was examined by the committing magistrate on the following day and no one appearing against him, he was discharged.

As will be seen by the sketch the depot building, the paved walk and the car track upon which the incoming mail, baggage and express cars are arrested on arrival here, are all entirely within the property lines of the defendant property. The red lines on the

132

sketch marking the boundaries of defendant's property.

Here is the sketch. "A" indicating the gate for the discharge of passengers. "Track No. 1," the track upon which the cars stated arrive, and "O" the point on the paved walk from which the plaintiff refused to move on the occasion stated.

It is universally held, that a criminal proceeding having been brought or prosecuted maliciously and without probable cause affords, when terminated, the basis of an action of malicious prosecution against the one so bringing or prosecuting such proceeding; but in order that the plaintiff may maintain this action, three things must concur:

1st. The motive of the party instituting or prosecuting the suit or proceeding must have been malicious.

2nd. The suit or proceeding complained of must have been instituted without any probable cause.

3rd. The suit must be terminated.

Here the suit had terminated, and the discharge of the plaintiff by the committing magistrate was *prima ficie* evidence of malice and shifted the burden of rebutting it on defendant. 47 A. 607.

But the defendant successfully carried that burden and did more for it conclusively established not alone that it had a probable cause for its action, but an actual one and that the prosecution was not alone to vindicate its own rights but to convenience and benefit the general public who may be the patrons of the several railroad companies employing the depot.

The company has the right to establish such rules as it sees fit for the use and employment of its own property so long as they do not violate the law, injure the public or derogate from the terms of its charter or its obligations as a common carrier. It is not pretended that the rule infringed or impaired any of these.

To our thinking the particular rule in question is a proper one and, as is testified to, is similar to those which exists in all well regulated passenger depots in the country. The defendant had the right to ordain the rule excluding persons of whatever class, calling or occupation it might see fit from being upon its private property. It had the right to order the plaintiff off of the premises and his refusal to leave was in itself a breach of the peace. Any act having a tendency to produce a breach of the peace is itself a breach of the peace. 2 Q. B.—145 Mass. 384, 64 N. H. 48.

The plaintiff is without any right to damages whatsoever.

The verdict of the jury and the judgment of the Court based thereon is error and must be reversed.

It is therefore ordered, adjudged and decreed that the verdict of the jury and the judgment of Court based thereon be and the same are hereby set aside, avoided and reversed and that hence plaintiff's suit be dismissed and rejected at his costs in both Courts.

March 21st, 1904.

Rehearing refused April 4, 1904.